1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

11

FAY B.,

Case No.  20-cv-05173-JSW

Plaintiff,

12

13

v.

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

ANDREW M. SAUL,

14

Defendant.

15

16

Re: Dkt. Nos. 21, 22

17

18

19

Now before the Court are the cross-motions for summary judgment filed by Plaintiff, Fay

20

B. ("Plaintiff"), and Andrew M. Saul, the Commissioner of Social Security Administration

21

("Commissioner").[1]  Pursuant to Civil Local Rule 16-5, the motions have been submitted on the

22

papers without oral argument.  The Court has considered the parties' papers, the administrative

23

24

[1] The Court has partially redacted Plaintiff's name in compliance with Federal Rule of

25

Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.  Kilolo Kijakazi became

26

the Acting Commissioner of the Social Security Administration on July 9, 2021.  Although Plaintiff originally brought this action against Former Commissioner Andrew Saul, this case may

27

properly proceed against Kilolo Kijakazi pursuant to 42 U.S.C. § 405(g).  The Clerk shall update the docket to reflect the substitution of Defendant Kijakazi.

28

1   record, and relevant legal authority.  For the reasons set forth herein, the Court HEREBY DENIES

2   Plaintiff's motion for summary judgment and GRANTS the Commissioner's cross-motion for

3   summary judgment.

**BACKGROUND**

**A.    Procedural History.**

On August 24, 2017, Plaintiff filed her application for Title II, Social Security Disability

Insurance (SSDI) benefits.  (Transcript ("Tr.") 157-58.)  Plaintiff's alleged onset date of disability

("AOD") was March 15, 2016.  (Tr. 157.)  On September 4, 2019, the Administrative Law Judge

("ALJ") found Plaintiff not disabled.  (Tr. 12-23.)  Plaintiff requested the Social Security Appeals

Council to review the ALJ's decision, but the Appeals Council denied Plaintiff's request on June

15, 2020.  (Tr. 1-6.)  The ALJ's decision became final when the Appeals Council denied review.

Plaintiff then appealed from the ALJ's decision to this Court, alleging that the ALJ erred by failing

to provide clear and convincing reasons for rejecting her symptom testimony.

**B.    Factual Background.**

Plaintiff was born in September 1955 and was 60 years old at her AOD.  (Tr. 157.)

Plaintiff lists her AOD beginning March 15, 2016, resulting from a combination of injuries

including degenerative disc disease of the cervical spine, carpal tunnel syndrome, and

fibromyalgia.  Plaintiff has a high school education and has previously worked as a customer

service representative.  (Tr. 31, 33, 43, 178-88.)

On April 17, 2018, Plaintiff's treating doctor Dr. Yusuke Kobayashi completed a statement

opining that Plaintiff had right plantar fasciitis, carpal tunnel syndrome, and cervical arthritis.

(Plaintiff's Reply at 2.)  However, Dr. Kobayashi predicted the "plantar fasciitis would likely heal

in about 6 months but noted [Plaintiff] had been referred to pain management for her neck

arthritis."  (Tr. 374.)  Further, Dr. Kobayashi concluded that Plaintiff could "sit for less than 2

hours and stand or walk for less than 2 hours in an 8-hour day... [and] would need unscheduled

breaks about 8 to 10 times each workday."  (Tr. 374.)  As to the severity of Plaintiff's pain, Dr.

Kobayashi opined that Plaintiff "could rarely lift less than 10 pounds ... use her hands for

handling and fingering activity for 40 percent of the workday and her arms for reaching only 20

United States District Court
Northern District of California

1   percent of the workday." (Tr. 374.)

2       The ALJ found Dr. Kobayashi's opinion "partially persuasive, specifically his assessment

3   that the claimant could perform frequent bilateral handling and fingering and occasional bilateral

4   reaching." (Tr. 21.) The ALJ noted that this conclusion was "consistent with the opinions of the

5   state agency medical consultants and the mild imaging" findings. (Tr. 21.) The state agency

6   medical consultants found that Plaintiff could occasionally reach overhead bilaterally and

7   frequently bilaterally handle and finger. (Tr. 21, 71, 83.)

8       Shortly after on April 19, 2017, another of Plaintiff's treating doctors Dr. Joseph Sclafini

9   opined that Plaintiff had cervical spondylosis with secondary myofascial pain. (Tr. 644.) Dr.

10  Sclafini stated that Plaintiff would be "limited to lifting no more than 10 pounds, no overhead

11  lifting, no standing or sitting for over 30 minutes without a 15-minute break, and no bending or

12  twisting." (Tr. 644.) However, the ALJ was not persuaded because the ALJ determined that Dr.

13  Sclafini's conclusions were vague, meant to be temporary, and were not supported by the

14  treatment record. (Plaintiff's Motion at 10.) The ALJ further noted that Plaintiff had progressed

15  in physical therapy and that Dr. Kobayashi predicted that Plaintiff's plantar fasciitis problem was

16  temporary and would improve. (*Id.*)

17      At Step One of her analysis, the ALJ found that Plaintiff did not engage in substantial

18  gainful activity during the relevant period. At Step Two, the ALJ found that Plaintiff was severely

19  impaired by degenerative disc disease of the cervical spine and bilateral carpal tunnel syndrome.

20  (Tr. 17.) The ALJ found at Step Three that Plaintiff's impairments did not meet or equal any of

21  the listed impairments. (Tr. 18.) The ALJ further determined that Plaintiff had a residual

22  functional capacity consistent with the following:

23      light work as defined in 20 C.F.R. § 404.1567(b) except the following limitations: can lift
        and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk six out of
24      eight hours; can sit six out of eight hours; can do frequent pushing and pulling with the
        right dominant upper extremity; can frequently climb ramps and stairs, balance, and stoop;
25      can occasionally kneel, crouch, and crawl; can occasionally reach overhead bilaterally; can
        frequently bilaterally handle and finger; and can do work that does not involve exposure to
26      extreme cold temperatures, vibrations in the workplace, hazards such as unprotected
27      heights and moving machinery.

28  (Tr. 19.)

United States District Court
Northern District of California

3

United States District Court
Northern District of California

1    At Step Four, the ALJ found that Plaintiff could return to her previous work as a customer

2    service representative.  (Tr. 22.)  At Step Five, the ALJ found that Plaintiff was not disabled

3    because she was capable of performing her past relevant work as a customer service

4    representative.  (Tr. 21.)

5    On August 6, 2019, Plaintiff testified that she stopped working because of her neck, back,

6    and wrist pain.  (Tr. 34.)  Plaintiff wears wrist braces as night and takes Meloxicam which causes

7    dizziness.  (Tr. 47, 49.)  Plaintiff's fingers hurt when she tries to type and can only type on her

8    phone for a few minutes at a time.  (Tr. 51.)  Additionally, Plaintiff undergoes physical therapy for

9    her hands.  (Tr. 51.)  Plaintiff claimed she cannot lift more than 5 pounds and can only type for 10

10   minutes before she must stop.  (Tr. 53, 54.)

11   At that same hearing, vocational expert ("VE") John Komar testified.  The VE recognized

12   Plaintiff's previous relevant work as that of a customer service representative.  (Tr. 43.)  The ALJ

13   requested the VE to opine whether a hypothetical individual could perform light work with

14   frequent pushing and pulling with the right arm, frequent climbing of ramps and stairs, balancing,

15   and stooping, occasional kneeling, crouching, and crawling, occasional overhead reaching

16   bilaterally, frequent bilateral handling and fingering avoiding extreme temperatures, vibrations,

17   and hazards.  (Tr. 57-58.)  The VE answered that Plaintiff's past relevant work would be

18   appropriate because a person limited to occasional handling and fingering, rather than frequent,

19   could not perform the past relevant work.  (Tr. 58.)  Furthermore, the VE testified that there would

20   not be any transferable skills.  (Tr. 59.)

**ANALYSIS**

21

22   C.    **Standards of Review.**

23         1.    **Standard of Review of Commissioner's Decision to Deny Social Security
                  Benefits.**

24   A federal district court may not disturb the final decision of the Commissioner unless it is

25   based on legal error, or the factual findings are not supported by substantial evidence.  42. U.S.C.

26   § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  "Substantial evidence means

27   more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

28

1  reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, F.3d

2  1035, 1039 (9th Cir. 1995).

3       The Court must "uphold the ALJ's decision where the evidence is susceptible to more than

4  one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is

5  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

6  ambiguities. *Andrews*, 53 F.3d at 1039-40; *accord Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th

7  Cir. 2017). However, the Court "must consider the entire record as a whole, weighing both the

8  evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

9  may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v.*

10  *Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

11  (9th Cir. 2007)).

12       **2.     Legal Standard for Establishing a Prima Facie Case for Disability and the**
        **ALJ's Decision.**

13       An ALJ uses a five-step process to determine if a person is disabled. *See Bowen v. Yucket*,

14  482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520. The ALJ here correctly set forth those steps

15  in her decision. At the first four steps, a claimant carries the burden of showing that they are

16  entitled to Social Security benefits. *See, e.g., Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)

17  (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)). At the final

18  step, however, the burden shifts back to the Commissioner to demonstrate that the claimant can

19  engage in other kinds of work. *Id.* at 1149.

20       At Step One, an ALJ asks whether a claimant is presently engaged in substantial gainful

21  activity. *See* 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *See id.* Here, the

22  ALJ determined Plaintiff had not engaged in substantial gainful activity during the relevant period.

23  (Tr. 17.)

24       At Step Two, an ALJ must determine whether a claimant has an impairment or

25  combination of impairments that qualify as severe. 20 C.F.R. § 404.1520(a)(4)(ii). "[T]he step-

26  two inquiry is a de minimis screening device to dispose of groundless claims . . . an impairment or

27  combination of impairments can be found not severe only if the evidence establishes a slight

28

United States District Court
Northern District of California

abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotations omitted).  Here, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine and bilateral carpal tunnel syndrome were severe.  (Tr. 17.)

At Step Three, an ALJ considers whether a claimant's impairment meets or equals one of the impairments listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work).  If so, benefits are awarded without consideration of the claimant's age, education, or work experience.  20 C.F.R. § 404.1520(a)(4)(iii).  If a claimant's impairment meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the ALJ will find the claimant disabled without considering their age, education, and work experience.  *Id.* In this case, the ALJ concluded that Plaintiff's impairments or combination of impairments do not equal the severity of one of the listed impairments.  (Tr. 18.)

At Step Four, if a claimant's impairments do not meet or equal a listed impairment, an ALJ will assess and make a finding about a claimant's residual functional capacity based on all relevant medical and other evidence in a claimant's case record.  20 C.R.F. § 404.1520(a)(4)(iv).  Benefits are denied if the claimant can still perform past relevant work.  *Id.*  The ALJ found that Plaintiff had the residual functional capacity to do light work, as defined in 20 C.F.R. section 404.1567(b). (Tr. 19.)  In addition, the ALJ found that Plaintiff could perform her past relevant work as a customer service representative actually or generally performed because it was not outside the scope of "light work."  (Tr. 58-59.)

At Step Five, if a claimant's impairments prevent them from making an adjustment to any other work in the national economy, they will be found disabled.  20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ found that Plaintiff was capable of performing her past relevant work as a customer service representative, and therefore was not disabled.  (Tr. 21.)

### 3.    2017 Revised Regulations.

Although Plaintiff filed her application for SSDI benefits on August 27, 2017, after the new regulations took effect, Plaintiff argues that the 2017 regulations "do not replace long-standing Ninth Circuit precedent that affords primacy to treating physician medical opinion

evidence." (Plaintiff's Motion at 7.) Plaintiff maintains in her Reply that the correct standard, as articulated in *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), is this Court may reverse 'if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard.'" (Plaintiff's Reply at 1.) However, the Court observes that the Ninth Circuit and district courts have recognized *Molina* as overruled by statute.

New Social Security Administration regulations and several Social Security Rulings regarding the evaluation of medical evidence have been amended for benefits applications filed after March 27, 2017, including SSR 96-2p ("Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions"). Under these new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a)); *see also* 20 C.F.R. § 404.1520c(a); *Jones v. Saul*, No. 2:19-cv-01273-AC, 2021 WL 620475, at *6 (E.D. Cal. Feb. 17, 2021) (determining that the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017).

Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) "other factors," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a)-(c). "Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions." *V.W. v. Comm'r of Soc. Sec.*, No. 18-CV-07297-JCS, 2020 WL 1505716, at *14 (N.D. Cal. Mar. 30, 2020) (citation omitted). "Further, the ALJ is required to specifically address the two most important factors, supportability and consistency." *Id.* (citing 20 C.F.R. § 416.920c(b)); *see also* 20 C.F.R. § 404.1520c(b)); *see also* Revisions to Rules, 82 Fed. Reg. 5844-01 at 5853 (the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that "form the

United States District Court
Northern District of California

1  foundation of the current treating source rule.").

2      Earlier this year in *Deborah K.*, the Southern District of California court recognized a

3  burgeoning trend to defer to the 2017 regulations in the absence of Ninth Circuit precedent.

4  *Deborah K. v. Kijakazi*, No. 20-cv-02065-GPC-AHG, 2022 WL 486528, at *8 (S.D. Cal. Feb. 16,

5  2022); *see also Robert D. v. Kijakazi*, No. 20-cv-2132-AJB-MSB, 2021 WL 5905734, at *3 (S.D.

6  Cal. Dec. 14, 2021) (noting the lack of Ninth Circuit case law that addresses whether ALJs are still

7  held to the "clear and convincing" and "specific and legitimate" standards when rejecting a

8  medical opinion).  In *Deborah K.*, the court recognized a number of California district courts

9  which applied the new regulations after recognizing that the Social Security Administration may

10  properly displace judicial precedent when an administrative agency intervenes by providing an

11  "authoritative and reasonable interpretation of a statute."  *See Lambert v. Saul*, 980 F.3d 1266,

12  1274 (9th Cir. 2020) (concluding that "*Chevron* deference applies and displaces [the Ninth

13  Circuit's] prior precedents on the issue of a presumption of continuing disability").

14      Following this line of reasoning, district courts in the Ninth Circuit generally have

15  determined that the Ninth Circuit's prior rule providing deference to treating physicians no longer

16  applies because of the new regulations.  *See, e.g., Kathy Jean T. v. Saul*, No. 20-cv-1090-RBB,

17  2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) ("This measure of deference to a treating

18  physician is no longer applicable under the 2017 revised regulations."); *but see Kathleen G. v.

19  Comm'r of Soc. Sec.*, No. C20-461-RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020)

20  (finding that the "specific and legitimate" standard for rejecting contradicted opinions of a treating

21  doctor continues to serve as a "benchmark against which the Court evaluates [the ALJ's]

22  reasoning"); *Julie R. M. v. Kijakazi*, No. 20-cv-1608-LL-MDD, 2021 WL 4993034, at *4 (S.D.

23  Cal. Oct. 26, 2021) (agreeing with "numerous district courts that found the treating source rule is

24  inconsistent with the SSA's 2017 regulations, which effectively displace or override it"); *Joseph

25  Perry B. v. Saul*, No. SACV 20-1196-KS, 2021 WL 1179277, at *3 (C.D. Cal. Mar. 29, 2021)

26  ("Nevertheless, the Court is mindful that it must defer to the new regulations, even where they

27  conflict with prior judicial precedent") (internal quotations omitted).

28      Accordingly, the Court will address the ALJ's analysis using the 2017 regulations, but will

also determine whether the ALJ adequately explained her reasons for her assessment of the persuasiveness of examining doctors Dr. Kobayashi and Dr. Sclafini.  For the reasons discussed below, the Court concludes that under either set of regulations, the ALJ properly evaluated the physicians' opinions.

**D.    The ALJ Did Not Commit Legal Error.**

Plaintiff argues that the ALJ committed legal error because: (1) she improperly rejected the medical opinions of Plaintiff's examining doctors; (2) improperly rejected Plaintiff's subjective testimony; and (3) the finding at Step Four is not supported by substantial evidence.  The Court will address each of Plaintiff's allegations in turn.

**1.    The ALJ Properly Rejected the Medical Opinions of Plaintiff's Examining Doctors.**

Plaintiff claims that the ALJ erred by rejecting the medical opinions of Plaintiff's examining doctors, instead giving more weight to the conclusion of the non-examining physicians. "The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy" formerly used for considering medical opinions. *Tina T. v. Comm'r of Social Security*, Case No. C19-6215 BHS, 2020 WL 4259863, at *4 (W.D. Wash. July 24, 2020).  Yet, "[t]he Commissioner's new regulations still require the ALJ to explain his or her reasoning, and to specifically address how he or she considered the supportability and consistency of the opinion." *Id.*  Further, the ALJ's analysis "must remain legitimate, meaning lawful or genuine, as it must still be supported by substantial evidence and free from legal error[.]" *Id.*

In general, "the opinion of a treating physician must be given more weight than the opinion of an examining physician, and the opinion of an examining physician must be afforded more weight than the opinion of a reviewing physician." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2015); *see also* 20 C.F.R. § 404.1527(c).  The degree to which a court weighs the testimony of a non-examining doctor depends on the supporting explanations the doctor provides. *Garrison*, 759 F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  The

ALJ is tasked with determining credibility and resolving ambiguities or medical testimony conflicts. *Andrews*, 53 F.3d at 1039-40. The ALJ may reject a physician's opinion that is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Under Ninth Circuit precedent before the 2017 regulations, the treating physician rule required the ALJ to provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. Further, the ALJ could only reject the treating or examining physician's opinion for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d 831-32 (citing *Andrews*, 53 F.3d at 1043). To satisfy the substantial evidence standard, the ALJ conducted "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings.'" *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). The ALJ relies upon Social Security Rulings and definitions in order to resolve inconsistencies. *See Titles II & XVI: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2*, SSR 83-10, at *5-6 (S.S.A. 1983) ("'Occasionally' means occurring from very little up to one-third of the time … [and] '[f]requent' means occurring from one-third to two-thirds of the time").

Although the ALJ must still provide reasoning to weigh all medical opinions, the regulations no longer require the ALJ to detail particularized procedures in considering opinions from treating sources. *Compare* 20 C.F.R. § 416.927(c)(2) (2016) and 20 C.F.R. § 416.927(c)(2) (2019) *with* 20 C.F.R. § 416.920c(b) (2019). Rather, the ALJ focuses on the persuasiveness of the medical opinions and must explain how she considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's medical opinion. 20 C.F.R. § 416.920c(b)(2) (2019). *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld").

Plaintiff argues that the opinion of her treating physician, Dr. Yusuke Kobayashi, should be accorded more weight than the non-examining state agency medical consultants under Ninth Circuit precedent. (Plaintiff's Reply at 2.) In addition, Plaintiff maintains that the ALJ failed to

United States District Court
Northern District of California

1  provide a specific and legitimate reason for rejecting Dr. Kobayashi's testimony.  (*Id.*)  The ALJ

2  was partially persuaded by Dr. Kobayashi's findings concerning Plaintiff's manipulative reaching

3  limitations to the extent they were consistent with the persuasive findings of the state agency

4  medical consultants and the mild diagnostic studies.  (*Id.* at 3.)  The state agency medical

5  consultants found that Plaintiff could occasionally reach overhead bilaterally and frequently

6  bilaterally handle and finger.  (Tr. 21, 71, 83.)

7      Plaintiff asserts that the ALJ improperly concluded that Dr. Kobayashi's assessment of

8  Plaintiff's limited abilities to sit, stand, walk, remain in one position, lift, concentrate, or attend

9  work without excessive absences, "unpersuasive."  (Tr. 22.)  However, the ALJ reasoned that this

10  conclusion was justified because it was not supported by Plaintiff's course of treatment or with Dr.

11  Kobayashi's assessment that Plaintiff was expected to recover from the plantar fasciitis.

12  Furthermore, the ALJ asserted it was inconsistent with Plaintiff's ability to "walk a mile and

13  perform her activities of daily living independently."  (Tr. 22.)  Thus, the ALJ has provided an

14  adequate explanation under the 2017 regulations.

15      Plaintiff contends that Dr. Kobayashi did not specifically explain whether Plaintiff was

16  limited to reaching overhead or in all directions are those activities were commingled in one broad

17  category.  (Tr. 375.)  Additionally, Plaintiff argues that Dr. Kobayashi only evaluated whether

18  Plaintiff's plantar fasciitis was expected to improve and did not opine about her spinal arthritis.

19  (Tr. 374.)  Although the 2017 regulations do not require the ALJ to specifically explain each

20  conclusion in detail, the Court observes that a different treating physician did address Plaintiff's

21  overhead reach.  On April 19, 2018, another one of Plaintiff's treating doctors, Dr. Joseph Sclafini,

22  opined that Plaintiff had cervical spondylosis with secondary myofascial pain.  (Tr. 644.)  Dr.

23  Sclafini opined Plaintiff would be limited to "lifting no more than 10 pounds, no overhead lifting,

24  no standing or sitting for over 30 minutes without a 15-minute break, and no bending or twisting."

25  (Tr. 644.)  However, this testimony is inconsistent with Dr. Kobayashi's assessment that Plaintiff

26  "could rarely lift less than 10 pounds. She could use her hands for handling and fingering activity

27  for 40 percent of the workday and her arms for reaching only 20 percent of the workday."  (Tr.

28  375.)  The ALJ properly accorded less weight to this inconsistent opinion and therefore was well

11

1    within reason to make a separate determination.

2        Additionally, the ALJ addressed why Dr. Sclafini's opinion was not persuasive,

3    concluding that Plaintiff's condition was vague, likely to be temporary, and was not supported by

4    the treatment record.  The ALJ found that the condition of Plaintiff's foot in April of 2018 was

5    unremarkable, that Plaintiff had made progress in physical therapy, and that Dr. Kobayashi

6    expected Plaintiff's plantar fasciitis to improve.  (Tr. 22.)

7        The Court finds that because the ALJ's reasoning focused on supportability and

8    consistency, the ALJ's conclusions complied with the 2017 regulations.  In addition, even

9    applying Ninth Circuit precedent, the ALJ provided clear and convincing reasons as to why the

10   opinions of Plaintiff's treating physicians were unpersuasive.  The Court concludes that the ALJ

11   reasonably interpreted Dr. Kobayashi's opinions in conjunction with the findings of the state

12   agency medical consultants and medical evidence.

13       **2.      The ALJ Properly Discredited Plaintiff's Subjective Symptom Testimony.**

14       Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective symptom

15   testimony.  To reject a claimant's allegations of disabling symptoms, an ALJ must perform a two-

16   part analysis.  *Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether the claimant has

17   produced objective medical evidence of an underlying impairment that could reasonably produce

18   the alleged pain or symptoms.  *Id.* at 1282.  Second, if the claimant meets this requirement and

19   there is no evidence of malingering, an ALJ may reject the claimant's testimony "only by offering

20   specific, clear and convincing reasons for doing so."  *Id.* at 1281 (citing *Dodrill v. Shalala*, 12

21   F.3d 915, 918 (9th Cir. 1994)).  Upon evaluating a claimant's subjective testimony, the ALJ

22   considers the claimant's "reputation for lying, prior inconsistent statements concerning the

23   symptoms … unexplained or inadequately explained failure to seek treatment or to follow a

24   prescribed course of treatment; and … the claimant's daily activities."  *Id.* at 1284; *see also*

25   *Stenberg v. Comm'r*, 303 Fed. Appx. 550, 552 (9th Cir. 2008) ("ALJ permissibly found that

26   Claimant was not entirely credible" where the record documented noncompliance with

27   recommended treatments).

28       To discredit a claimant's testimony of pain and other limitations, "the ALJ must

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1  specifically identify what testimony is [or is not] credible" and state "reasons why the testimony is

2  unpersuasive." *Valentine*, 574 F.3d at 693 (quoting *Morgan*, 169 F.3d at 599).  "[I]f a claimant is

3  able to spend a substantial part of his day engaged in pursuits involving the performance of

4  physical functions that are transferable to a work setting, a specific finding as to this fact may be

5  sufficient to discredit an allegation of disabling excess pain." *Fair v Bowen*, 885 F.2d 597, 603

6  (9th Cir. 1989).

7        Failure to dispute the ALJ's conclusions can weigh against the Plaintiff's credibility.

8  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it

9  is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676,

10  681 (9th Cir. 2005).  For example, in *Burch*, the plaintiff alleged her back pain was severe, but the

11  objective medical evidence, including an MRI and x-rays, indicated only mild degenerative disc

12  disease.  *Id.*  The Ninth Circuit upheld the ALJ's decision to factor this objective evidence into the

13  ALJ's assessment of the plaintiff's subjective claims and noted the ALJ made "additional and

14  specific findings to support his credibility determination."  *Id.* at 680-81; *see also Warre v.*

15  *Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

16  effectively with medication are not disabling for the purpose of determining eligibility for . . .

17  benefits").  Although Plaintiff asserts many reasons why she is unable to work, Plaintiff failed to

18  dispute the ALJ's findings and therefore waived her right to do so.  *Bray v. Comm'r of Soc. Sec.*

19  *Admin.*, 554 F.3d 1219, 1226 & n.7 (9th Cir. 2009).

20        Here, as in *Burch*, reports of mild physical impairments, without additional complications,

21  contradict Plaintiff's claims of severe back pain.  400 F.3d at 681.  The ALJ properly relied on the

22  rather mild findings in the diagnostic studies and examinations.  (Tr. 20.)  Additionally, the ALJ

23  factored the objective medical record into her analysis of Plaintiff's subjective symptom

24  testimony.  Plaintiff alleges she was unable to work due to carpal tunnel syndrome and neck pain

25  and the ALJ considered the objective medical evidence as one factor inconsistent with Plaintiff's

26  allegations of disabling pain and limitations.  (Tr. 19-20.)

27        Because there was no evidence of malingering, the ALJ determined that Plaintiff's

28  subjective complaints were inconsistent with her activities of daily living.  The ALJ found that

13

"Plaintiff was able to perform activities of daily living, which the ALJ asserted included walking a mile, driving short distances, using a cell phone, preparing simple meals, and grocery shopping with her husband." (Tr. 20.)  The ALJ further asserted Plaintiff did not always follow treatment recommendations, such as wearing her wrist braces only at night instead of all day and declining steroid injections. (Tr. 20.)  As in *Burch*, the evidence of record does not provide strong support to establish that Plaintiff's pain was severe enough to motivate her to seek additional treatment or follow the prescribed course of treatment.  Indeed, the evidence in the record considered clearly and convincingly subverts Plaintiff's claims of debilitating physical and mental conditions, and thus the ALJ satisfied her burden under *Smolen*.  80 F.3d at 1281.

### 3. The ALJ's Determination That Plaintiff Was Not Disabled is Supported by Substantial Evidence.

Plaintiff asserts that the ALJ "improperly omitted from the vocational hypothetical Plaintiff's credible allegations and critical aspects of the limitations assessed by Plaintiff's treating doctors." (Plaintiff's Reply at 7.)  The ALJ's decision turned on her conclusion at Step Five. While the claimant has the burden of proof at Steps One through Four, "the burden of proof shifts to the [Commissioner]" at Step Five "to show that the claimant can do other kinds of work." *Embrey v. Bowen,* 849 F.2d 418, 422 (9th Cir.1988).  The ALJ can give a hypothetical to a VE to make a residual functional capacity determination, which the expert can then use to conclude what type of work someone with the limitations of the claimant could hypothetically do.  *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.  *Andrews,* 53 F.3d at 1043.  *See also Magallanes,* 881 F.2d at 751-55.  In *Magallanes,* evidence that supported the ALJ's determination included, among other things, testimony from the claimant that conflicted with her treating physician's opinion.  881 F.2d at 751.  The ALJ is responsible for resolving conflicts in medical testimony and resolving ambiguity.  *See id.* at 751, 755.  Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are

1    relevant to discount the opinions of claimant's treating physicians falls within this responsibility.

2        At the hearing on August 6, 2019, VE John Komar opined whether a hypothetical

3    customer service representative could perform light work with frequent pushing and pulling with

4    the right arm, frequent climbing of ramps and stairs, balancing, and stooping, occasional kneeling,

5    crouching, and crawling, occasional overhead reaching bilaterally, frequent bilateral handling and

6    fingering avoiding extreme temperatures, vibrations, and hazards.  (Tr. 57-58.)  The VE answered

7    that Plaintiff's past relevant work would be suitable because a person limited to occasional, rather

8    than frequent, handling and fingering could not perform the past relevant representative work.

9    (Tr. 58.)  Plaintiff argues that the VE's hypothesis is incomplete and inaccurate.  However, despite

10    Plaintiff's conclusion that the VE's testimony has no evidentiary value, Plaintiff fails to identify

11    what additional evidence should have been included in the hypothetical.  (Plaintiff's Motion at

12    14.)

13        In addition, the ALJ reasonably found the prior administrative medical findings of state

14    agency medical consultants to be supported by and consistent with the evidence in the record as a

15    whole.  (Tr. 21.)  The ALJ explained that the findings were consistent with the ALJ's independent

16    review of medical records, included a detailed discussion of the evidence reviewed, and were

17    consistent with the mild diagnostic studies, the routine and conservative treatment, and Plaintiff's

18    improvement with treatment.  (Tr. 21.)  Based on the entire record, the Court finds that the ALJ

19    did not err in her reliance on the VE's hypothetical in her determination that Plaintiff could

20    perform her past relevant work as a customer service representative as actually performed.

21    Accordingly, the Court finds that the ALJ's conclusion that Plaintiff possessed the residual

22    functional capacity to perform her past relevant work as actually performed was supported by

23    substantial evidence and free of legal error.

24                                      **CONCLUSION**

25        For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment

26    and GRANTS the Commissioner's cross-motion for summary judgment.  The Court shall issue a

27    ///

28    ///

United States District Court
Northern District of California

15

1    separate judgment, and the Clerk shall close this file.

2

3            **IT IS SO ORDERED.**

4        Dated:  March 21, 2022

5        _____

6        JEFFREY S. WHITE
         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28